UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MARK A. CROSS** | **CIVIL ACTION NO. 3:11-cv-0098** |
|     **LA. DOC #307133** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN, WINN CORRECTIONAL** | |
| **CENTER** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Pro se petitioner Mark A. Cross filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on January 5, 2011.  Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections.  He is incarcerated at the Winn Correctional Center, Winnfield, Louisiana.  Petitioner attacks his 2007 conviction for distribution of cocaine and the twenty-five-year hard labor sentence imposed by the Thirty-Seventh Judicial District Court, Caldwell Parish.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

**BACKGROUND**

Petitioner was convicted of distribution of cocaine on February 16, 2007.  [Doc. #1, p. 1]. Petitioner's motions for a new trial and for post-verdict judgment of acquittal were denied on March 27, 2007.  [Doc. # 1, pp. 34-39].  On April 10, 2007, petitioner was sentenced as a third time felony offender to serve 25 years imprisonment and to pay a fine of $2000 and other fees. R. at 542.  He appealed his conviction to the Louisiana Second Circuit Court of Appeals raising a single claim for relief – excessiveness of sentence.  On March 19, 2008, his conviction and

sentence were affirmed.  *State v. Cross*, 43,068 (La. App. 2 Cir. 3/19/08); 982 So.2d 201.

On March 20, 2008, his court-appointed appellate counsel notified petitioner of the results of his appeal and advised him that he would not represent petitioner should petitioner desire to seek further direct or collateral review.  Counsel also advised petitioner of the time limits for seeking further direct review and for seeking collateral review in the Louisiana and federal courts.  [Doc. # 1, pp. 42-43].  In a pleading post-marked May 20, 2008, petitioner, proceeding *pro se*, applied for Supervisory or Remedial Writs in the Louisiana Supreme Court. [Doc. #5, p. 8].  His writ application was denied on February 20, 2009.  *State of Louisiana ex rel. Mark A. Cross*, 08-1243 (La. 2/20/09); 1 So.3d 492.  Petitioner did not seek further direct review in the United States Supreme Court.  [Doc. # 1, p. 4].

On September 25, 2009, petitioner signed a *pro se* application for post-conviction relief; the pleading raised the following claims for relief: (1) insufficient evidence; (2) contradictory testimony; (3) tainted jury; (4) prejudicial remark from Bench and juror; (5) ineffective assistance of trial counsel; (6) ineffective assistance of appellate counsel; (7) cruel and unusual punishment; and (8) unprofessional act.  Petitioner apparently provided no brief or memorandum in support of these claims. [Doc. #1, pp. 49-56].

His application for post-conviction relief was received and filed on October 14, 2009, and denied on October 19, 2009. [Doc. #1, p. 45].  On some unspecified date thereafter petitioner sought review in the Second Circuit Court of Appeals by submitting a hand-written pleading which set forth general claims of ineffective assistance of counsel, "contradicting testimony," "tainted jury," and violation of Louisiana's electronic surveillance act.  Petitioner also included excerpts of the trial transcript with his pleading. [Doc. #1, pp. 14-33].  Petitioner's writ

application was assigned Docket Number 45,254-KH; on December 17, 2009, the Second Circuit

denied writs and sent Notice of Judgment to the petitioner.  *State of Louisiana v. Mark A. Cross*,

No. 45,254-KH. [Doc. #1, pp. 46-47].

In a pleading post-marked December 28, 2009, petitioner sought supervisory or remedial

writs in the Louisiana Supreme Court. [Doc. #5, p. 9].  On December 17, 2010, his writ

application was denied.  *State of Louisiana ex rel. Mark A. Cross v. State of Louisiana*, 10-0152

(La. 12/17/10); 51 So.3d 20. [Doc. #1, p. 48].

Petitioner filed the instant petition on January 5, 2011, raising the following claims: (1)

insufficient evidence; (2) contradictory testimony; (3) tainted jury; (4) prejudicial remark from

the Bench and juror; (5) ineffective assistance of counsel; (6) ineffective assistance of appellate

counsel; (7) cruel and unusual punishment; (8) unprofessional act. [Doc. #1, pp. 10-13].

The underlying facts in this case have been set forth by the Second Circuit of the

Louisiana Court of Appeal, as follows:

> The Caldwell Parish Sheriff's Office, with the assistance of officers from other
> parishes, was conducting an undercover operation on March 22, 2006, in Columbia,
> Louisiana. An undercover officer from the Richland Parish Sheriff's Department was
> to drive around an area of the city and attempt to make narcotics purchases. The
> officer who was to make the purchases traveled in one vehicle while three other
> officers rode in a second vehicle that maintained a short distance from the lead car.
> The officer in the lead vehicle wore a wire to record an audio of the transactions
> which the officers in the surveillance vehicle were able to hear in real time.
>
> The undercover officer rode around the target area attempting to make a purchase.
> The officer used hand signals to attract the attention of various individuals, indicating
> that he was interested in purchasing narcotics. After several unsuccessful tries, the
> officer stopped at a gas station convenience store and purchased a "pop." As he
> continued his mission, the officer took a short cut to the street by traveling through
> the parking lot of several businesses. As the officer was doing so, he encountered
> defendant, who had been riding a bicycle through the parking lot. The officer asked
> defendant if he knew where he could get a "twenty." Defendant told the officer that

he did and told the officer to follow him to the "café." After driving a half mile to the "café," the officer waited for defendant to conduct the transaction. Defendant went into the "café," walked back out to the officer's vehicle and asked for the money for the "twenty." The officer gave defendant a $20 bill, then defendant went back into the building and several minutes later returned with a rock of cocaine which he gave to the officer who left the area to meet with the surveillance officers, who took possession of the rock of cocaine.

Defendant was later charged by bill of information with distribution of cocaine. A unanimous jury found defendant guilty as charged. A presentence investigation was ordered and thereafter, on April 10, 2007, defendant was sentenced to 25 years of imprisonment with a $2,000 fine together with fees. No motion to reconsider was filed.

*State v. Cross*, 43,068 (La. App. 2 Cir. 3/19/08); 982 So.2d 201, 202-03.

## LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider habeas claims.  After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, ⸺ U.S. ⸺⸺, 131 S.Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

4

state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 364-65 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.  The inquiry into the issue of "unreasonableness" is objective. *Williams*, 529 U.S. at 405-06 (2000).  A state court's *incorrect* application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be *unreasonable. Id.* at 410-12 (emphasis supplied).

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).  In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct.  *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

## I.      Insufficiency of the Evidence

Petitioner first argues that the evidence was insufficient to support his conviction.  He earlier raised this issue in his application for post-conviction relief, which was subsequently denied in the Second Circuit Court of Appeal and Louisiana Supreme Court.  *See State of*

*Louisiana ex rel. Mark A. Cross v. State of Louisiana*, 10-0152 (La. 12/17/10); 51 So.3d 20.

[Doc. #1, p. 48].  Petitioner's claim is based on the following:

A. No analysis was conducted of the audio tape of the transaction. Witness testimony at trial shows no one could positively confirm who was on the tape. (no audio or video). No showing that the operator was competent to operate device.

B. No identification evidence was produced at trial. No identification line-up was ever performed. All three officers testified at trial that they were at the old folks home in the haven parking lot. The detectives report does not state where they actually were. Detective Sedric Meredith states under oath that they were all sitting on the north side of the Haven old folks home then later Detective Toney Childress stated under oath that they were located on the south side of the nursing home little parking lot. The detectives have contradictional stories on their actual whereabouts at the Haven nursing home parking lot. [Petitioner claims this is perjured testimony].

C. The police states that Mark Cross is responsible for the alleged crime, yet the detectives testified at trial that none of them actually witnessed the alleged incident. Counsel failed to object to these statements. [Petitioner again claims this was perjured testimony].

D. No physical evidence was recovered from the defendant's person. Neither drugs nor any money was recovered and the detectives failed to search the game room at the corner of Martin Luther off of La. Hwy. 849 in an effort to ascertain if there was another perpetrator existed.

E. Officer was ask did he see the transaction. He said no and he was ask how he knew a transaction had took place. He said the undercover officer told the black male you know good, good deal you did me good, and at that point they made a transaction. On the tape played for the juror did not say officer said you do me good, good deal you do me good. [Again Petitioner claims perjured testimony].

[Doc. # 1, p. 10-11].

A reviewing court will not disturb a state court jury verdict so long as the evidence, viewed in the light most favorable to the verdict, is sufficient to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.  *Young v. Guste*, 849 F.2d 970, 972 (5th Cir. 1988); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).  It is the jury's responsibility "to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Thus, the federal *habeas* court does not "focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In so doing, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (quoted source omitted).  The reviewing court may not substitute its interpretation of the evidence for that of the fact finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).  In the end, *habeas* relief on a claim of insufficient evidence is appropriate only when no rational trier of fact could have found petitioner guilty beyond a reasonable doubt based on the evidence adduced at trial.  *West v. Johnson*, 92 F.3d 1385 (5th Cir. 1996).

The evidence presented in the case *sub judice* was sufficient to sustain petitioner's conviction.  With respect to the audio tape, the record shows it was properly authenticated at trial.  The testimony of the officers clearly shows that the tape that was played for the jury was the same tape used to record petitioner's conversation with the undercover officer.  Officer Cleophas May, the undercover officer, identified the tape at trial.  R. at 471-72.  Officer Bob Morris testified that he recorded the conversation, and he identified the tape at trial.  R. at 360-61.  Finally, Detectives Tony Childress and Sedric Meredith, who were listening in on the conversation, identified the tape at trial as well.  R. at 386, 414.  The testimony of the officers also established a chain of custody for the tape. R. 414-16.  The jury obviously found the officers credible, and it is not up to this court to question that finding.

Further, despite petitioner's allegations that no identification evidence was produced at

trial, Detectives Meredith and Childress and Officer May all positively identified petitioner as the person who sold the cocaine to Officer May.  R. at 413, 386-87, 469.  Likewise, petitioner's claims that none of the officers testified at trial that they actually witnessed the incident are simply not accurate.  Officer May, the undercover officer, clearly testified that petitioner was the person from whom he purchased the cocaine.  R. at 469.  In addition, the other officers listened to the transaction as it took place on the two-way radio.  *See* R. at 387-88.

Petitioner correctly states that no drugs or money were recovered from his person at the time of the arrest.  However, this is because petitioner was arrested some three months after the transaction in question.  As Detective Meredith testified, this was because they wanted to protect the identity of their undercover officer.  R. at 441.  This is presumably the same reason the officers did not search the game room for evidence at that time.  Besides, petitioner was charged with distribution of cocaine, a crime for which possession of the drug is not an essential element. The cocaine that petitioner sold to Officer May was entered into evidence at trial, and the jury apparently found it sufficient to support a conviction.

Finally, petitioner claims that one of the officers committed perjury when testifying as to the contents of the audio tape.  Detective Childress testified that Officer May thanked petitioner for facilitating the drug deal by saying "good, good deal" and "you did me good."  R. at 396. Then, when the tape was played later in the trial, this language was apparently never heard. However, in spite of petitioner's conclusory allegation that this was perjured testimony, several explanations could exist for the inconsistency.  Chief among these is the fact that the detective was testifying from memory and simply could have been incorrect.  Again, "the credibility of witnesses and weight to be given to their testimony are generally questions within the province of

8

the jury." *United States v. Haese*, 162 F.3d 359, 365 (5th Cir. 1998).

The jury in this case concluded that there was sufficient evidence to prove petitioner's guilt under Louisiana law.  Petitioner has not shown, nor can he show, that this finding was unreasonable.  Accordingly, viewed in a light most favorable to the verdict, the evidence was sufficient to allow a reasonable jury to find the essential elements of distribution of cocaine beyond a reasonable doubt.  *See Ramirez*, 398 F.3d at 695; *Young*, 849 F.2d at 972.  It is recommended that this claim be **DENIED**.

## II.      Contradictory Testimony

In petitioner's next claim, he argues that the officers' testimony conflicted as to the exact location where the wire was placed on the undercover officer.  [Doc. # 1, p. 12].  The record reveals that Officer Morris and Detective Meredith claimed they were at the airport, while Detective Childress said they were at T.A. Robert's place of business.  R. at 362, 425, 389. Nevertheless, their location at the time the undercover officer was wired is not relevant to the issue of guilt or innocence in this case.  The officers were consistent as to where the actual transaction took place.  Finally, to the extent petitioner might be arguing this was perjured testimony, "[p]erjury is not established by mere inconsistencies between prosecution witnesses' testimony."  *Badeaux v. Thaler*, No. 09-4127, 2010 WL 5955266, at *4 (S.D. Tex. 2010) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).  Thus, it is recommended that this claim be **DENIED**.

## III.     Impartiality of Juror

Petitioner next claims that "[t]he prosecuting attorney allowed his cousin to foreman the jury."  [Doc. # 1, p. 12].  He alleges that this is a conflict of interest, and states "see Jury

9

foreman." *Id.*  However, petitioner fails to specify to which prosecuting attorney he is referring. The government has pointed out that juror Jake Wallace is the nephew of the son-in-law of the district attorney at the time of the instant trial. [Doc. # 19, p. 15].  The defendant's challenge for cause as to Mr. Wallace was denied by the court because "Mr. Wallace stated that he had little contact with [the district attorney]."  R. at 311.

"The standard for determining whether a proposed juror may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties in accordance with his instructions and oath."  *United States v. Wharton*, 320 F.3d 526, 535 (5th Cir. 2003).  In the *habeas* context, the question of whether a prospective juror may be challenged for cause is a factual issue governed by 28 U.S.C. § 2244(d)(2), under which the finding of the trial judge is presumed correct.  *Allridge v. Cockrell*, 92 Fed. App'x 60, 66 (5th Cir. 2003).  To rebut this presumption, the petitioner must adduce "clear and convincing evidence that the factual determination by the State court was clearly erroneous."  *Kelly v. Lynaugh*, 862 F.2d 1126, 1134 (5th Cir. 1988)

Here, Mr. Wallace testified during *voir dire* that his uncle is married to the daughter of the district attorney.  R. at 285.  In denying petitioner's challenge for cause as to Mr. Wallace, the trial court judge determined that he could serve as an impartial juror.  Again, this finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(2).  Petitioner has not provided the court with any evidence to rebut this presumption.  Furthermore, the record demonstrates that the trial judge was justified in determining that Mr. Wallace could serve as an impartial juror and in denying the challenge for cause.  The relationship between Mr. Wallace and the district attorney is not an especially close one, and Mr. Wallace testified that he would be

10

fair, impartial, and not prejudiced against petitioner.  *See* R. at 286, 291.  Therefore, it is

recommended that this claim be **DENIED**.

## IV.    Ineffective Assistance of Counsel

In petitioner's fourth, fifth, and sixth claims, he argues that he received ineffective

assistance of counsel.  Ineffective assistance of counsel claims may be considered under 28

U.S.C. § 2254.  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  To prevail on a claim

of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell

below an objective standard of reasonableness and (2) that the ineffectiveness of counsel

prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  If the defendant does

not make a sufficient showing as to one prong of the test, the other prong need not be considered.

*Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be

analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions

"fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687.  There is a

strong presumption that counsel performed adequately and exercised reasonable professional

judgment.  *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).  Furthermore, "a conscious and

informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective

assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious

unfairness."  *Id.*

To prove prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine

11

confidence in the outcome" and is less than a preponderance of the evidence.  *Id.* at 693-94.

A.      *Prejudicial Remark by Juror*

Petitioner first argues that his trial counsel failed to object to a remark made by a prospective juror during *voir dire*. [Doc. # 1, p. 12].  He claims this remark had a prejudicial effect on three other jurors eventually selected for the jury.  *Id.*  Specifically, the following exchange occurred during *voir dire* between defense attorney Louis Champagne and prospective juror Chuck Esters:

| | |
|---|---|
| Mr. Champagne: | Okay, if we had to vote right now, if we said we're finished, that's all we needed to do, how would you vote? Who would vote him innocent? Who would vote him guilty? Chuck? |
| Mr. Esters: | What? |
| Mr. Champagne: | I'm putting you on the spot and I'm sorry. |
| Mr. Esters: | I would uh--- |
| Mr. Champagne: | That's not fair to put you on the spot like that. |
| Mr. Esters: | I don't care. |
| Mr. Champagne: | Okay. |
| Mr. Esters: | I would have to take into consideration to uh, how many times he'd been here before. Uh, I don't know if that is the same uh, Mark Cross that you read in the paper year after year, month after month--- |
| Mr. Champagne: | Okay. All right. |
| Mr. Esters: | ---you know. |

R. at 106.

The government argues that the attorney's failure to object to the juror's statement was a tactical decision which should survive the high standard set by *Strickland*.  The undersigned agrees.

An "attorney's actions during voir dire are considered to be a matter of trial strategy.  A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel

12

unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).  In the instant case, petitioner has failed to show that his attorney's decision rendered the entire trial "obviously" unfair.  The attorney immediately changed the subject once the juror made the statement.  R. at 106-07.  Further, he exercised a challenge for cause as to this juror, and the challenge was granted.  R. at 433.  Finally, the trial judge considered the issue before denying the motion for new trial, and the judge found no prejudicial error.  R. at 533-34.  Considering the deference granted to the attorney's tactical decision, this claim should be **DENIED**.

B.      *Post Trial Motions*

In Claims V and VI, respectively, petitioner argues that his trial counsel and appellate counsel were ineffective for not appealing the denial of two post-trial motions: a motion for post-verdict judgment of acquittal and a motion for new trial.  The first of these motions concerned the issue of the identification of petitioner.  Petitioner's attorney argued that the only independent identification procedure was the in-court identification by the undercover officer.  R. at 532-33.  She argued this identification was prejudicial because petitioner was the only African-American in the courtroom not seated on the jury or in the audience.  *Id.* at 532.  The new trial motion concerned the supposedly prejudicial remark by prospective juror Esters, analyzed above.  R. at 533-34.

A review of the record indicates that after the trial judge denied these motions, petitioner's attorney gave notice of intent to seek appeal "not on these particular motions, but on the entire case . . . ."  *Id.* at 534.  She then filed a motion for appeal and designation of the record.

13

R. at 57.  After this point, the appeal was assigned to the Louisiana Appellate Project, and appellate counsel took over petitioner's case.  *Id.* at 58.  The only issue raised on appeal by appellate counsel concerned the alleged excessiveness of petitioner's sentence.  *See State v. Cross*, 43,068 (La. App. 2 Cir. 3/19/08); 982 So.2d 201.

Trial counsel's performance in this regard was reasonable under the circumstances, as petitioner cannot point to any unprofessional error by trial counsel which might fall below an objective standard of reasonableness.  The attorney gave notice of intent to appeal all the issues in the case and then handed the case over to the Louisiana Appellate Project.  Thus, there was no ineffective assistance by trial counsel.

Likewise, petitioner cannot show that appellate counsel's failure to raise these issues on appeal was objectively unreasonable.  Again, there exists a strong presumption that counsel's actions are reasonable.  *See Strickland*, 466 U.S. at 689.  Appellate counsel "need not, and should not, raise every nonfrivolous claim, but rather should 'winnow out weaker arguments' to maximize the likelihood of success on appeal."  *Kossie v. Thaler*, 423 Fed App'x 434 (5th Cir. 2011) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  In *Robbins*, the Supreme Court endorsed the Seventh Circuit's standard that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

With respect to the motion for acquittal, any argument on appeal concerning the in-court identification by Officer May would have been meritless.  Under Louisiana law, the standard for the admissibility of an in-court identification is whether, under the totality of the circumstances,

the suggestive identification procedure led to a substantial likelihood of irreparable

misidentification.  *State v. Jones*, 94–1098 (La. App. 1 Cir. 6/23/95); 658 So.2d 307, writ denied,

95–2280 (La. 1/12/96); 666 So.2d 320.  "When a suspect is the only one presented for

identification, this renders the identification procedure subject to further inquiry.  However, if the

identification is otherwise reliable, the evidence is admissible."  *State v. Walker*, 576 So.2d 1202

(La. App. 5th Cir. 1991).  The reliability of identification testimony is normally measured by the

factors set out in the Supreme Court case of *Manson v. Brathwaite*, 432 U.S. 98 (1977).  These

factors include "the opportunity of the witness to view the criminal at the time of the crime, the

witness' degree of attention, the accuracy of his prior description of the criminal, the level of

certainty demonstrated at the confrontation, and the length of time between the crime and the

confrontation."  *Id.* at 114 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200, (1972)).

     In the instant case, the officer testified he spoke with petitioner for six or seven minutes.

R. at 494.  Officer May also testified he never lost sight of petitioner as he followed him from the

parking lot to the café, and that petitioner was in the café for only two-and-a-half minutes.  R. at

480-81.  He was presumably very attentive, as he was carrying out his professional duties as an

undercover police officer.  With the possible exception of a reference to petitioner's "crooked

teeth," his prior identification appears to have been accurate, and he stated he was "absolutely"

sure petitioner was the person who sold him cocaine.  R. 480.  Finally, approximately eleven

months elapsed between the transaction and the trial.  Under the totality of the circumstances, the

facts do not suggest any substantial likelihood of misidentification by Officer May.

     Moreover, trial counsel had ample opportunity to cross-examine Officer May regarding

his identification of petitioner.  R. at 486-93, 496.  Additionally, as stated above, *supra Part I*,

Detectives Meredith and Childress also positively identified petitioner as the person who sold the cocaine to Officer May.  Trial counsel cross-examined these witnesses on the issue of identification as well, and the jury chose to believe the officers.  Thus, failure of petitioner's appellate counsel to raise this meritless claim on direct appeal was not objectively unreasonable.

Likewise, appellate counsel's decision to not raise the new trial motion on appeal was also reasonable under the circumstances.  Louisiana Code of Criminal Procedure Article 841 provides that an irregularity or error cannot be raised on appeal unless an objection was made at the time of the occurrence.  La. C. Cr. P. art. 841.  With regard to alleged errors during the jury selection process, any objection must be made before the jury is selected and sworn.  *See State v. Torres*, 580 So.2d 1064, 1067–68 (La. App. 4th Cir. 1991).  Here, no objection was ever made by trial counsel.[1]  Thus, an attempt by appellate counsel to argue this claim on appeal would have been fruitless, and petitioner cannot overcome the presumption that counsel's performance was reasonable.

In sum, petitioner brings forth insufficient evidence to support a claim that his counsel's performance either fell below an objective standard of reasonableness, or that petitioner was prejudiced as a result.  Petitioner's claims of ineffective assistance of counsel should therefore be **DENIED.**

## V.      Excessiveness of Sentence

Petitioner's final two claims concern the alleged excessiveness of his sentence.  In particular, he argues that the sentence he received - twenty-five years at hard labor with a $2000

---

[1] In ay case, as explained above, petitioner has not demonstrated that the attorney's failure to so object constituted ineffective assistance of counsel.  *See* Part IV(A), *supra*.

16

fine - was unconstitutionally excessive because it "is grossly out of proportion to the severity of

the crime or is nothing more than the purposeless imposition of pain and suffering."  [Doc. # 1, p.

13].  This argument, however, is unavailing.

The Louisiana Second Circuit Court of Appeal addressed this argument on direct appeal.

As observed by the court:

> A 25-year sentence imposed on this third felony offender with a history of drug
> offenses who has failed to alter his continued criminal behavior despite opportunities
> to reform is not grossly disproportionate to the severity of the offense nor is it
> shocking to the sense of justice.
>
> Defendant contends that his sentence is an imposition of pain and suffering. While
> it is certain that some pain and suffering may result from defendant's incarceration,
> there is no needless infliction of pain and suffering that would render this sentence
> constitutionally excessive. *State v. Smith*, 01-2574 (La. 01/14/03); 839 So.2d 1; *State
> v. Dorthey*, 623 So.2d 1276 (La. 1993); *State v. Bonanno*, 384 So.2d 355 (La. 1980).

*State v. Cross*, No. 43,068 (La. App. 2 Cir. 3/19/08); 982 So.2d 201, 203.

Petitioner also argues that the trial court erred when it found he was on parole at the time

of the commission of the instant offense.  It is not entirely clear whether petitioner was in fact on

parole at that time; nevertheless, the trial judge stated that petitioner's parole status did not factor

into the determination of his sentence.  R. at 541.  The trial judge provided several other factors

at the sentencing hearing that warranted the challenged sentence, including: 1) petitioner was a

third felony offender; 2) petitioner had an utter disregard of the law; 3) there was a high risk that

he would repeat as a violator; 4) he was in need of a correctional environment; 5) he had been

convicted of numerous misdemeanor offenses; and 6) a lesser sentence would have deprecated

the seriousness of the offense and petitioner's record.  *Id.*

Petitioner's sentence was within the statutory limits for distribution of cocaine.  *See* La.

R.S. 40:967(B)(4)(b).  "If a sentence is within the statutory limits," to obtain relief a defendant

must show "that the sentencing decision was wholly devoid of discretion or amounted to an

'arbitrary or capricious abuse of discretion' (citation omitted), or that an error of law resulted in

the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his

liberty."  *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Petitioner has failed to make

either showing here.  Accordingly, petitioner's sentence was not excessive, and the sentence did

not violate clearly established Federal law.  These final two claims should be **DENIED**.

**VI.      Request for an Evidentiary Hearing**

Petitioner's claims were adjudicated on the merits in state court, and he has failed to

overcome the limitation of § 2254(d)(1) on the record that was before the state court.  *See Cullen*

*v. Pinholster*, —— U.S. —— , 131 S.Ct. 1388, 1398–1401 (2011).  Thus, no evidentiary hearing is

warranted.

**CONCLUSION AND RECOMMENDATION**

For the reasons stated above, it is recommended that the petition for writ of habeas corpus

[doc. # 1] under 28 U.S.C. § 2254 be **DENIED**.  Under the provisions of 28 U.S.C. §

636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this

Report and Recommendation to file specific, written objections with the Clerk of Court.  A party

may respond to another party's objections within **fourteen (14) days** after being served with a

copy thereof.  A courtesy copy of any objection or response or request for extension of time shall

be furnished to the District Judge at the time of filing.  Timely objections will be considered by

the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACHING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 6th day of October, 2011.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE